Jesse S. Johnson (*pro hac vice*)
Florida Bar No. 0069154
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561-826-5477
Fax: 561-961-5684
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanessa C. Spencer, on behalf of herself and others similarly situated,<br><br>                              Plaintiff,<br><br>    vs.<br><br>#1 A LifeSafer of Arizona, LLC and #1 A LifeSafer, Inc.,<br><br>                              Defendants.<br>_____ | ) Case No. CV-18-2225-PHX-BSB<br>)<br>)<br>) **PLAINTIFF'S UNOPPOSED**<br>) **MOTION FOR PRELIMINARY**<br>) **APPROVAL OF CLASS ACTION**<br>) **SETTLEMENT**<br>)<br>)<br>)<br>)<br>)<br>) |

**Introduction**

In this action against #1 A LifeSafer of Arizona, LLC ("Defendant" or "LifeSafer"),[1] Vanessa C. Spencer ("Plaintiff") has reached an agreement to settle her claims under the Consumer Leasing Act, 15 U.S.C. § 1667 ("CLA"), and its implementing regulations, 12 C.F.R. pt. 1013 *et seq.* ("Regulation M"), on a class-wide basis on behalf of 8,182 consumers who signed materially identical ignition interlock program service agreements that Plaintiff alleges provided defective disclosures.

---

[1]    #1 A LifeSafer, Inc. initially was named in this action as well but has since been dismissed and is not a part of the settlement at bar.

1

As a result, and though Defendant denies any liability under the statute, the parties have agreed to settle Plaintiff's claim on a class-wide basis to avoid the risks and expense of further litigation. Following mandatory initial disclosures as well as additional informal discovery regarding the proposed class and its potential damages, Plaintiff and Defendant have entered into a class settlement agreement whereby Defendant will (i) create a non-reversionary class settlement fund totaling $36,819; (ii) separately pay an award of $1,000 to Plaintiff for her service to the class; (iii) separately pay an award of attorneys' fees, costs, and expenses to Plaintiff's counsel, in an amount to be determined by the Court; and (iv) pay all costs of class notice and administration of the class settlement. On this latter point, the parties jointly have selected a class administrator with significant experience handling class action settlements like the one presented here.

Plaintiff now seeks entry of the attached order certifying the settlement class, preliminarily approving the proposed class settlement, and directing class notice in the form and manner prescribed by the parties' agreement. Plaintiff and her counsel strongly believe that this settlement is fair, reasonable, and adequate, and in the best interests of all class members.

Notably, Defendant does not oppose this relief.

**Summary of the Class Settlement**

A copy of the class action settlement agreement is attached to the accompanying Declaration of Jesse S. Johnson and defines a settlement class under Rule 23(b)(3) as follows:

> All persons (1) to whom #1 A LifeSafer of Arizona, LLC provided an ignition interlock device to be used for personal, family, or household purposes, (2) with a program service agreement having an initial term greater than four months, and (3) for which the agreement was in force as of January 10, 2019 or was terminated on or after July 16, 2017.

Defendant represents that there are approximately 8,182 class members, including Plaintiff.

Class members who submit valid, timely claim forms will receive a pro-rata portion of the $36,819 non-reversionary class settlement fund. These pro-rata portions

2

will likely amount to between $22 and $45 per person based on historical claims rates in consumer protection class actions. To the extent any settlement checks go uncashed after the class administrator takes all reasonable steps to forward checks to any forwarding addresses, the residual funds will be directed to Arizona Foundation for Legal Services & Education as a *cy pres* recipient. Significantly, none of the funds will revert to Defendant.

Separately, and subject to this Court's approval, Defendant also will pay Plaintiff $1,000 in the form of a service award, all costs of class notice and settlement administration, as well as an award of attorneys' fees, costs, and expenses to Plaintiff's counsel in an amount to be determined by the Court. The parties will continue to negotiate the proposed amount of such a fee and expense award, which will be the subject of a separate motion filed at the conclusion of this case.

Lastly, to inform class members of the excellent benefits resulting from this settlement, the parties' agreement provides for a robust notice program to send direct mail notice to each class member with a detachable claim form. The names and recent addresses of those class members will be provided to the class administrator by Defendant, whose business records reflect the necessary contact information for each of the 8,182 class members. The class administrator will then take all reasonable steps necessary to ensure that each class member receives direct mail notice, including updating addresses by reference to U.S. Postal Service databases and sending the notices with forwarding addresses requested. Additionally, a long-form class notice will be posted to Plaintiff's counsel's website so that class members may learn more about this action and the proposed settlement terms.

## Argument

### I. This Court should preliminarily certify the settlement class.

Pursuant to Rules 23(a) and 23(b)(3), Plaintiff must establish the following for preliminary certification of her proposed settlement class: (1) the class is so numerous that joinder of all members is impracticable; (2) class members share questions of law or fact in common with Plaintiff; (3) Plaintiff's claims are typical of class members' claims;

(4) Plaintiff will fairly and adequately protect the interests of the class; (5) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (6) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. And because certification is sought here in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").[2]

### A. The members of the proposed settlement class are so numerous that joinder of all of them is impracticable.

First, as to Rule 23(a)(1), "courts [generally] find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). That is, "the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." *Amone v. Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005) (citing *Newberg & Conte, 1 Newberg on Class Actions* § 3.6 (4th ed. 2002)).

Here, during the relevant time period, Defendant entered into materially similar ignition interlock program service agreements with some 8,182 consumers in Arizona. Every one of these agreements is alleged to have violated the CLA and Regulation M in the same ways as the agreement tendered to Plaintiff. Because the settlement class contains 8,182 members—who are readily identifiable from Defendant's business records—joinder is impracticable, and Rule 23(a) numerosity is satisfied.

---

[2]    All internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

4

**B. Questions of law and fact are common to the members of the settlement class.**

Second, the commonality requirement of Rule 23(a) demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That is, "[a]ll questions of fact and law need not be common to satisfy the commonality requirement." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

Nonetheless, the questions of fact and law at issue here are entirely common because the salient questions—*e.g.*, whether Defendant is a lessor within the scope of the CLA, and whether Defendant's form program service agreement violated the CLA's disclosure requirements—are the same for each class member. So, because each class member has the same CLA claims against Defendant, Rule 23(a)(2) commonality is readily satisfied. *See, e.g.*, *Tarnoff v. Am. Honda Fin. Corp.*, No. 96-6923, 1999 WL 98331, at *2 (N.D. Ill. Feb. 19, 1999) ("The commonality and typicality prerequisites are also met. All class members apparently signed the same lease forms containing the same warranty disclosure. The key issue is whether the disclosure complied with the CLA."); *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996) ("The Court is satisfied that the core issue presented by the class is whether various of the CLA's disclosure requirements are violated by the Bank One Lease. This issue predominates over all others."); *accord McLaughlin v. Wells Fargo Bank N.A.*, No. 15-2904, 2016 WL 8290115, at *1 (N.D. Cal. Nov. 18, 2016) (granting preliminary approval to class settlement involving claims that the defendant failed to make required payoff disclosures).

**C. Plaintiff's claims are typical of the class's claims.**

Third, "[t]o demonstrate typicality, the putative class must show that the named parties' claims are typical of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d

1015, 1030 (9th Cir. 2012). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, typicality is satisfied because Defendant offered materially identical program service agreements to thousands of consumers within the class period, all of whom have CLA claims identical to Plaintiff's, and which are based solely on the text of the similar agreements they each executed. *Tarnoff*, 1999 WL 98331, at *2 (typicality requirements are met where "[a]ll class members apparently signed the same lease forms containing the same warranty disclosure"); *Demitropoulos*, 915 F. Supp. at 1419 (same); *accord Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (certifying class of persons in California who received identical form collection letters in alleged violation of the Fair Debt Collection Practices Act ("FDCPA")).

### D. Plaintiff, and her counsel, will fairly and adequately protect the interests of the members of the proposed settlement class.

Fourth, to adequately represent a class for purposes of Rule 23(a)(4), a named plaintiff must show that she has no interests antagonistic to the interests of the class. *Hanlon*, 150 F.3d at 1020. Here, Plaintiff has amply demonstrated as much because she pursued this case from the outset with the goal of obtaining relief for the members of the class, which she has now accomplished. Moreover, Plaintiff has been actively involved in this litigation since its inception, remained in regular contact with her attorneys throughout the process, and was firmly committed to protecting the interests of absent class members. She now submits that the excellent results obtained for the class reflects that commitment.

As well, "the representative and his counsel must also show they will prosecute the action vigorously on behalf of the class." *Gonzalez v. Germaine Law Office PLC*, No. 15-1427, 2016 WL 3360700 (D. Ariz. June 1, 2016) (Silver, J.). Plaintiff has retained the services of counsel who are well-versed in class action litigation, as the attorneys at

Greenwald Davidson Radbil PLLC are well-equipped to handle the instant litigation and have ample experience representing plaintiffs in class actions like this one. *See Knapper v. Cox Commc'ns, Inc.*, No. 17-913, 2019 WL 467163, at *4 (D. Ariz. Feb. 6, 2019) (Logan, J.) (appointing Greenwald Davidson Radbil PLLC as class counsel in class action under the Telephone Consumer Protection Act ("TCPA")); *Gonzalez*, 2016 WL 3360700, at *2-3 (preliminarily approving class settlement under the FDCPA and appointing Greenwald Davidson Radbil PLLC class counsel); Johnson Decl. at ¶¶ 7-12 (collecting cases appointing Greenwald Davidson Radbil PLLC class counsel in consumer protection class actions).

Thus, Rule 23(a)(4) adequacy is satisfied here. *See Datta v. Asset Recovery Sols., LLC*, No. 15-188, 2016 WL 1070666, at *5 (N.D. Cal. Mar. 18, 2016) ("In addition, Plaintiff's counsel has submitted several declarations which describe counsel's experience in prosecuting consumer protection and FDCPA/RFDCPA class actions. Accordingly, the Court finds that Plaintiff has satisfied the vigorous prosecution requirement.").

### E. The questions of law and fact common to the settlement class predominate over any questions potentially affecting only individual class members.

Fifth, "the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The focus of this inquiry is "the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*.

The central legal issue before this Court is whether Defendant's ignition interlock agreements violated the CLA and Regulation M by failing to provide necessary disclosures in the form and substance required by law. Plaintiff's and the class's claims all stem from materially identical agreements, and numerous courts have found that

common questions of law and fact predominate where class members' claims are based on standardized documents such as lease agreements or debt collection letters. *See, e.g.*, *Cox v. Porsche Fin. Servs., Inc.*, No. 16-23409, 2018 WL 5905381, at *9 (S.D. Fla. Nov. 9, 2018) ("The questions at issue – particularly (1) whether Porsche violated the CLA for its role in approving and effecting leases that fail to disclose net trade-in allowance . . . are common ones that predominate over individual questions. Accordingly, the undersigned finds that both classes have met the predominance requirement."); *Kindler v. Mitsubishi Motors Credit of Am., Inc.*, No. 09-315, 2011 WL 13177287, at *2 (W.D. Mo. Apr. 20, 2011) (granting approval of class settlement involving vehicle leases and noting that "common questions of law and fact predominate over any questions affecting only individual Settlement Class Members, and include whether or not the Defendants' actions constituted a violation of the Consumer Leasing Act[.]"); *see also Schuchardt v. Law Office of Rory W. Clark*, No. 15-1329, 2016 WL 232435, at *6 (N.D. Cal. Jan. 20, 2016) (finding predominance satisfied because "the Court has already determined that the legality of the debt collection letters is a question of law that is common to the class. If the Court were to find that the text violated the FDCPA, that single adjudication would reach the claims of all Class Members.").

Rule 23(b)(3) predominance is thus satisfied here.

**F. A class action is the superior method for the fair and efficient adjudication of Plaintiff's and class members' claims.**

Finally, Rule 23(b)(3) also requires that a court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "The superiority inquiry requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In determining whether the "superiority" requirement is satisfied, a court may consider the following: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the

class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). These factors, however, are not exhaustive. *Kamm v. California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975).

Here, as noted above, the class action vehicle is the superior method for resolving all class members' claims. No single member of the proposed class has an interest in controlling the prosecution of this action because the claims of all class members are identical, as the allegations involve standardized conduct with regard to form ignition interlock service agreements. Noteworthy, the alternatives to a class action are either a multiplicity of lawsuits in Arizona courts, or, worse, no recourse at all for thousands of class members.

Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015). And most class members would be unaware of their rights in the first place, and as a result, unlikely to pursue claims. *See Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) ("Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually."). As a result, absent a class action, given the relatively low value to individual potential litigants, many claims identical to those asserted by Plaintiff will likely go unaddressed. *See Demitropoulos*, 915 F. Supp. at 1419-20 ("[S]ince we are dealing with statutory damages under the CLA, the amount of recovery available to any individual is relatively small. Class members, even if aware of their rights, likely would lack the initiative to bring suit individually."); *accord Gonzalez*, 2016 WL 5844605 at *2 ("Given the low individual recovery limits under the FDCPA, a class settlement is superior to individual litigation.").

Consequently, Rule 23(b)(3) superiority is met, rendering the claims here eminently suitable to class treatment.

## II. This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

Next, Rule 23(e) requires that this Court make a preliminary determination of fairness as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Then, once the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued to class members, this Court will hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34.

Preliminary approval thus requires only that this Court evaluate whether the proposed settlement: (1) was negotiated at arm's length; and (2) is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."). However, while a complete fairness evaluation is unnecessary at this early

juncture, Plaintiff and her counsel strongly believe that the resolution reached here is in the settlement class's best interests.

The Ninth Circuit has identified eight factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As well, Rule 23(e) itself requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be approved.

### A. The strengths of Plaintiff's case and the risks inherent in continued litigation against Defendant, and securing class certification, favor preliminary approval.

The first and second *Hanlon* factors both support approval. Of course, every class action involves some level of uncertainty, both on the merits and on the appropriateness of certification. This case was no different, as there was no guarantee that Plaintiff's proposed class would be certified or that this Court, or the trier of fact, would find in Plaintiff's favor as to liability.

11

Moreover, even removing such uncertainty, it bears mention that the CLA's damages provision is not mandatory. Instead, it provides for awards in the Court's discretion *up to* certain amounts—specifically, the "lesser of $1,000,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B). Several factors are to be considered in the determination of such an award. *See id.* at § 1640(a)(4). Thus, even assuming Plaintiff proceeded to trial and prevailed, there was no guarantee this Court would award the class *full* statutory damages of 1% of Defendant's net worth. *See Clausen v. Beneficial Fin. Co. of Berkeley*, 423 F. Supp. 985, 990 (N.D. Cal. 1976) ("In determining the proper class award, the Court is directed to consider among other relevant factors, the amount of actual damages suffered, the frequency and persistency of the failures to comply with the law. The resources of the creditors, the number of persons adversely affected, and the extent to which a failure to comply was intentional.").

No matter, the parties' agreement here ensures class benefits *above* that threshold. That is, based upon Defendant's latest financials, the class's statutory damages recovery of $36,819 exceeds the cap imposed by the CLA. This, coupled with the avoidance of uncertainties attendant to continued litigation, weighs in favor of the settlement's immediate relief. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) (in an FDCPA action also involving improper form disclosures, "[t]he FDCPA provides for an award up to certain amounts depending on a number of factors, including the nature of the debt collector's noncompliance. Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

**B. The immediate cash relief afforded by the settlement—when compared to the limitations on damages imposed by the CLA—favors preliminary approval.**

For this same reason, the fourth *Hanlon* factor—the amount offered in the settlement—also favors approval. To reiterate, the cash relief provided to class members

here exceeds the 1% statutory damages cap. *See* 15 U.S.C. § 1640(a)(2)(B). That is, while the parties may disagree about the proper way to calculate Defendant's net worth, by creating a class settlement fund of $36,819, Defendant is committing an amount that exceeds 1% of its balance sheet net worth. *Accord Sanders v. Jackson,* 209 F.3d 998, 1004 (7th Cir. 2000) (holding that "net worth" in an FDCPA action—which similarly limits statutory damages based on the defendant's net worth—means "balance sheet or book value net worth" of assets minus liabilities); *see also Schuchardt*, 314 F.R.D. at 684 ("In sum, Defendant's net worth limits the scope of recovery here, and the Settlement Fund provides for recovery that exceeds this scope. Thus, even if the amount of per-Class Member recovery is less than the amount typically obtained in this District, because it exceeds the statutory maximum recovery, the amount offered in the Settlement Agreement favors final approval.").

And, even if the class settlement did not exceed the statutory damages cap—it does—this Court should still approve the settlement. *See McLaughlin v. Wells Fargo Bank, N.A.*, No. 15-2904, 2017 WL 994969, at *2 (N.D. Cal. Mar. 15, 2017) (approving Truth in Lending Act ("TILA") class settlement for 88% of statutory damages cap); *Altamirano v. Shaw Indus., Inc.*, No. 13-939, 2016 WL 1271046, at *4 (N.D. Cal. Mar. 31, 2016) (finally approving class settlement for approximately 14% of total damages at issue, and noting, "Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within the range of reasonableness in light of the risks and costs of litigation.").

In sum, given the proposed fund here in comparison to statutory damages limits, the settlement presented is fair, reasonable, and adequate, and should be approved by this Court.

## C. The posture of this case and experience and views of counsel favor approval.

Next, the fifth and sixth *Hanlon* factors likewise support preliminary approval. After months of litigation—which included the exchange of mandatory initial

disclosures, the filing of an amended complaint, as well as the filing of a motion to dismiss under Rules 12(b)(2) and 12(b)(6)—the settlement here was achieved with a clear view as to the strengths and weaknesses of Plaintiff's class claims. Plaintiff and Defendant also exchanged informal discovery concerning Defendant's net worth, class damages and the number of potential class members. As a result, Plaintiff was able to adequately assess the class's maximum potential statutory damages recovery at trial, and negotiated a settlement that *exceeds* that amount.

Thus, counsel—who have substantial experience in litigating class actions, particularly under consumer protection statutes[3]—and this Court are adequately informed to evaluate the fairness of the settlement. And both Plaintiff and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Further, the parties' arm's-length settlement negotiations through experienced counsel demonstrate the fairness of the settlement that was reached, and that the settlement is not a product of collusion. Indeed, counsel for Defendant and Plaintiff each zealously negotiated on behalf of their clients over the course of several months, resulting in the exchange of multiple written counteroffers and telephonic conferences among counsel before reaching the agreement here presented. As a result, Plaintiff and her counsel submit that the value of the class's recovery here—which exceeds the applicable damages cap—reflects their confidence in Plaintiff's claims. *See Schuchardt*, 314 F.R.D. at 685 ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.").

---

[3]     *See* Johnson Decl. at ¶¶ 7-12.

**D. The settlement treats class members equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each class member has the same claim resulting from his or her execution of the same form program service agreement with Defendant. And as a result, the settlement provides that each participating class member will receive an equal portion of the $36,819 class fund. Moreover, the release affects each class member in the same way as each participating class member will agree to release the same CLA claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

**III.    This Court should approve the parties' proposed notice program.**

Pursuant to Rule 23(e), upon preliminary approval, this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a well-respected third-party class administrator—First Class, Inc.[4]—which will use all

---

[4]    First Class, Inc. is an experienced settlement administrator that has previously been approved to administer similar class action settlements. *See, e.g., Veness v.*

reasonable efforts to provide direct mail notice to each class member. The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion, and that class members may make an appearance through counsel; (5) information regarding Plaintiff's individual award and her request for an award of attorneys' fees and expenses for her counsel; and (6) how to submit a claim and make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

Also, the direct mail notice to class members will include a pre-addressed detachable claim form to be completed and returned to the class administrator. The parties have made it as convenient as possible for class members to indicate their desire to participate in the settlement fund.

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *see also Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice.").

**IV.    Scheduling a final fairness hearing is appropriate.**

Lastly, the final step in the settlement approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine after the final

---

*Heywood, Cari & Anderson, S.C.*, No. 17-338, 2017 WL 6759382, at *5 (W.D. Wisc. Dec. 29, 2017); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2014 WL 4816698, at *2 (W.D. Ohio Sept. 18, 2014).

fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). The parties respectfully request that this Court set a date for a hearing on final approval, at the Court's convenience, approximately 90 to 120 days after the Court's preliminary approval of the settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the above-described class action settlement, certifying the proposed settlement class, appointing Plaintiff as class representative, and appointing her counsel—Greenwald Davidson Radbil PLLC—as class counsel. As previously noted, Defendant does not oppose this relief.


RESPECTFULLY SUBMITTED this 22nd day of February, 2019.

By: */s/ Jesse S. Johnson*
Jesse S. Johnson
GREENWALD DAVIDSON
RADBIL PLLC
*Attorney for Plaintiff*


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 22, 2019, a copy of the foregoing was filed electronically using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record.

*s/ Jesse S. Johnson*
Jesse S. Johnson