Jesse S. Johnson (*pro hac vice*)
Florida Bar No. 0069154
GREENWALD DAVIDSON RADBIL PLLC
7601 N. Federal Hwy., Ste. A-230
Boca Raton, FL 33487
Telephone: 561-826-5477
Fax: 561-961-5684
jjohnson@gdrlawfirm.com

*Class Counsel*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanessa C. Spencer, on behalf of herself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> #1 A LifeSafer of Arizona, LLC, <br><br> Defendant. | Case No. CV-18-2225-PHX-ESW <br><br> **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES** |

**Introduction**

The parties' class settlement presented here for final approval under Rule 23(e) will provide at least 746 participating class members over $49 each in statutory damages in connection with program service agreements they signed with #1 A LifeSafer of Arizona, LLC ("Defendant" or "LifeSafer").[1] Vanessa Spencer alleges that those agreements failed to satisfy the disclosure requirements mandated by the Consumer Leasing Act ("CLA"). While Defendant maintains that the CLA does not apply to its agreements, and that it did not violate the CLA in any event, it nevertheless agreed to establish a settlement fund of $36,819 to settle the class's claims—an amount that exceeds the statutory damages cap imposed by the CLA.

Additionally, Defendant will pay the costs of administering the settlement and will separately pay $1,000 to Ms. Spencer in recognition of her service to the class as named plaintiff, as well as an award of attorneys' fees and costs to her counsel, both subject to this Court's approval. Ms. Spencer seeks approval of the foregoing incentive and fee awards by way of separate motion filed concurrently herewith.

Defendant also has confirmed as part of the settlement that it no longer uses the form program service agreement that gave rise to this action. Defendant instead will use a modified version going forward that addresses the substance of Ms. Spencer's allegations. Considering this important change in Defendant's business practices, along with the statutorily-limited damages available under the CLA, the settlement here represents an excellent result for class members, as well as any consumers doing business with Defendant in the future. And further underscoring the favorable nature of this settlement, to date, and after being provided direct mail notice, not a single class member

---

[1] The deadline for submitting claims is May 3, 2019; individual recoveries will be adjusted for any additional valid claims received before then.

1

has lodged an objection to the settlement's terms or requested to be excluded,[2] nor have any objections resulted from notice issued pursuant to the Class Action Fairness Act ("CAFA").[3]

Ms. Spencer and her counsel strongly believe that the parties' settlement is fair, reasonable, and adequate, and in the best interest of class members. As more fully set forth below, Ms. Spencer respectfully requests that this Court enter the accompanying order granting final approval to the settlement. Significantly, Defendant does not oppose this relief.

## Summary of the Class Settlement

**I.   Defendant will establish a $36,819 non-reversionary class settlement fund and has already changed its form program service agreement.**

This Court previously certified a settlement class under Rule 23(b)(3) comprised of all persons to whom Defendant provided an ignition interlock device for personal use with a program service agreement lasting longer than four months and for which that agreement was in force as of January 10, 2019 or terminated on or after July 16, 2017. *Spencer v. #1 A LifeSafer of Ariz., LLC*, No. 18-2225, 2019 WL 1034451, at *2 (D. Ariz. Mar. 4, 2019). There are 8,134 persons in total in the class,[4] and 746 already have submitted valid claim forms. The deadline for objecting, opting out, or submitting a claim is May 3, 2019.

---

[2] The deadline for submitting objections and exclusions is May 3, 2019. *See* ECF No. 48 at 8. Should any objections or exclusions be received by that deadline, Ms. Spencer will address them by way of a separate filing in advance of the August 6, 2019 final fairness hearing.

[3] Defendant issued CAFA notice on March 5, 2019. *See* Affidavit of Bailey Hughes, attached as Exhibit A, at ¶ 4.

[4] The parties originally estimated 8,182 class members, but de-duplication efforts by First Class, Inc. ("First Class")—the Court-approved class administrator—in connection with the class list revealed only 8,134 unique individuals in the settlement class. *See* Ex. A at ¶¶ 5-10.

2

If no other claims are received, each of the 746 participating class members will receive a pro-rata portion of the $36,819 settlement fund in the amount of $49.35. Receipt of additional claims before the deadline will marginally reduce this per-person recovery. Significantly, the aggregate settlement fund exceeds the CLA's cap on class-wide statutory damages of 1% of Defendant's net worth. *See* 15 U.S.C. § 1640(a)(2)(B) ("in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $1,000,000 or 1 per centum of the net worth of the creditor").[5]

Should any settlement checks go uncashed after First Class takes all reasonable steps to forward checks to any forwarding addresses, the leftover funds will be disbursed to Arizona Foundation for Legal Services & Education as the Court-approved *cy pres* recipient. None of the funds will revert to Defendant.

Defendant also has confirmed in the settlement agreement that it no longer uses the form ignition interlock program service agreement that gave rise to this litigation, and that it has modified its form agreement on a going-forward basis to include written disclosures providing all the information that Ms. Spencer contends is required of consumer leases subject to the CLA. Further, Defendant has agreed to provide this information in a form and manner consistent with the CLA. Such a change in Defendant's business practices benefits not only Plaintiff and the absent class members, but also any other consumers who lease ignition interlock devices from Defendant in the future.

---

[5]   All internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

3

**II. Defendant also will pay, separate from the class fund, an individual award to Ms. Spencer, all notice and administration costs, and an award to class counsel for their reasonable attorneys' fees, costs, and litigation expenses.**

Subject to this Court's approval, Defendant also separately will pay Ms. Spencer $1,000 for her service to the class, as well as an award of attorneys' fees, costs, and expenses to Plaintiff's counsel in an amount to be determined by the Court. To that end, Ms. Spencer has filed a separate motion seeking the Court's approval for such awards. These awards will *not* diminish class members' recoveries in any way.

Defendant also paid for a robust notice program administered by First Class to send direct mail notice to each class member with a detachable claim form. All costs of administering class members' claims and then mailing settlement checks (upon the Court's approval) likewise will be paid by Defendant.

**III. No one has objected to or opted out of the settlement, and to date, 746 class members have submitted valid claims.**

With the assistance of First Class, the parties disseminated direct mail notice of the settlement to each class member using the names and last known addresses found in Defendant's records. Class counsel also has posted a long-form notice and various other case materials on its website for review.[6] The direct mail notice included a claim form to be completed and returned by each class member who wishes to take part in the settlement fund. Prior to the mailing, First Class took its usual steps of de-duplicating class members' records and updating addresses through the U.S. Postal Service. *See* Ex. A, at ¶¶ 6-9. Afterward, and pursuant to this Court's order, notices were mailed on March 22, 2019. *Id.* at ¶ 10.

A total of 1,256 notices have been returned as undeliverable with no forwarding addresses, and for these notices, First Class undertook skip-trace search measures to attempt to locate updated addresses for those class members. *Id.* at ¶ 14. These efforts

---

[6] *See* https://www.gdrlawfirm.com/Spencer-v-LifeSafer-Arizona-preliminary-approval (last visited April 23, 2019).

4

resulted in the re-mailing of 878 notices to new addresses, only 124 of which were again returned as undeliverable. *Id*. Correspondingly, the parties have achieved a success rate of nearly 94% for their direct mail notice campaign.

Meanwhile, Ms. Spencer is proud to report that the class's reaction has been universally positive—not a single class member has lodged an objection to the settlement or requested to be excluded, and the parties already have received 746 valid claims representing approximately 9% of the class. *Id*. at ¶¶ 16-18. And to reiterate, no objections from governmental agencies have resulted from CAFA notice, either.

## Argument

### I. This Court should confirm its certification of the settlement class.

This Court previously certified the class for settlement purposes. *Spencer*, 2019 WL 1034451, at *2. Ms. Spencer agrees with the Court's reasoning, sees no need to revisit certification here, and thus respectfully submits that this Court should confirm its certification of the settlement class.

### II. This Court should finally approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e) and relevant Ninth Circuit law.

As previewed in Ms. Spencer's motion for preliminary approval, *see* ECF No. 47 at 10-15, courts in this Circuit consider eight factors in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Additionally, Rule 23(e) itself requires a court to consider several other factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors here, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). No matter, the relevant factors strongly support the conclusion that Ms. Spencer and Defendant's negotiated settlement is fundamentally fair, reasonable, and adequate, and should be approved.

### A. The strengths of Ms. Spencer's case and the risks inherent in continued litigation, and securing class certification, favor final approval.

To begin, the first and second *Hanlon* factors both support approval. Every class action involves some level of uncertainty—on the merits and on the appropriateness of certification. This case was no different, as there was no guarantee that Ms. Spencer's proposed class would be certified or that this Court, or the trier of fact, would find in Ms. Spencer's favor as to liability.

And even removing such uncertainty, it bears mention that the CLA's damages provision is not mandatory. Instead, it provides for awards in the Court's discretion *up to* certain amounts—specifically, the "lesser of $1,000,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B). Several factors determine the precise amount of such an award. *See id.* at § 1640(a)(4); *see also Clausen v. Beneficial Fin. Co. of Berkeley*, 423 F. Supp. 985, 990 (N.D. Cal. 1976) ("In determining the proper class award, the Court is directed to consider among other relevant factors, the amount of actual damages suffered, the frequency and persistency of the failures to comply with the law. The resources of the creditors, the number of persons adversely affected, and the extent to which a failure to comply was intentional."). Thus, even assuming Ms. Spencer proceeded to trial and prevailed, there was no guarantee this Court would award the class *full* statutory damages of 1% of Defendant's net worth.

No matter, the parties' agreement here ensures class benefits *above* that threshold. Based upon Defendant's latest financials, the class's statutory damages recovery of

6

$36,819 exceeds the cap imposed by the CLA. This, coupled with the avoidance of uncertainties attendant to continued litigation, weighs in favor of the settlement's immediate relief to class members. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) (in a class action under the Fair Debt Collection Practices Act ("FDCPA") also involving improper form disclosures, "[t]he FDCPA provides for an award up to certain amounts depending on a number of factors, including the nature of the debt collector's noncompliance. Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

### B. The immediate cash relief afforded by the settlement—when compared to the limitations on damages imposed by the CLA—favors approval.

For this same reason, the fourth *Hanlon* factor—the amount offered in the settlement—also favors approval. To reiterate, the cash relief provided to class members here exceeds the 1% statutory damages cap. *See* 15 U.S.C. § 1640(a)(2)(B). That is, while the parties may disagree about the proper way to calculate Defendant's net worth, by creating a class settlement fund of $36,819, Defendant is committing an amount that exceeds 1% of its balance sheet net worth. *Accord Sanders v. Jackson,* 209 F.3d 998, 1004 (7th Cir. 2000) (holding that "net worth" in an FDCPA action—which similarly limits statutory damages based on the defendant's net worth—means "balance sheet or book value net worth" of assets minus liabilities); *see also Schuchardt*, 314 F.R.D. at 684 ("In sum, Defendant's net worth limits the scope of recovery here, and the Settlement Fund provides for recovery that exceeds this scope. Thus, even if the amount of per-Class Member recovery is less than the amount typically obtained in this District, because it exceeds the statutory maximum recovery, the amount offered in the Settlement Agreement favors final approval.").

And, even if the class settlement did not exceed the statutory damages cap—it does—this Court should still approve the settlement. *See McLaughlin v. Wells Fargo*

7

*Bank, N.A.*, No. 15-2904, 2017 WL 994969, at *2 (N.D. Cal. Mar. 15, 2017) (approving Truth in Lending Act ("TILA") class settlement for 88% of statutory damages cap); *Altamirano v. Shaw Indus., Inc.*, No. 13-939, 2016 WL 1271046, at *4 (N.D. Cal. Mar. 31, 2016) (finally approving class settlement for approximately 14% of total damages at issue, and noting, "Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within the range of reasonableness in light of the risks and costs of litigation."); *Wood v. Ionatron, Inc.*, Nos. 06-354, 06-377, 2009 WL 10673479, at *4 (D. Ariz. Sept. 28, 2009) (Jorgensen, J.) (final approval for class settlement obtaining 17% of plaintiffs' "best case" damages estimate).

As of this filing, 746 class members have submitted valid claims, *see* Ex. A at ¶ 18, allowing for individual recoveries of approximately $49.35. In addition to CLA and TILA actions, class settlements under the FDCPA are instructive analogs because, like the CLA and TILA, the FDCPA includes a statutory damages cap for class recoveries. And, to that end, the likely $49 per-person recovery here compares very favorably to recent TILA and FDCPA class settlements, including settlements approved in this District. *See Gonzalez v. Germaine Law Office PLC*, No. 15-1427, 2016 WL 5844605, at *2 (D. Ariz. Oct. 3, 2016) (Silver, J.) (finally approving FDCPA settlement providing $19.25 per class member); *see also, e.g.*, *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at *4 (D. Me. Feb. 21, 2017) ($42 per class member in FDCPA class action); *Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165, at *4 (M.D. La. Sept. 14, 2016) ($52.28 per class member in FDCPA class action); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 each in FDCPA class action); *Lehmeyer v. Messerli & Kramer, P.A.*, No. 15-2419, ECF No. 61 (D. Minn. Aug. 10, 2016) ($25 per class member in FDCPA class action); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 3654472, at *2 (S.D. Ohio July 8, 2016) ($10 each in FDCPA class action); *Kausch v. Berman & Rabin, P.A.*, No. 15-537, ECF No. 33 at 3 (E.D. Mo. July 8, 2016) ($39.06 each in FDCPA class action); *Schuchardt*, 314 F.R.D. at 683 ($15.10 each

in FDCPA class action); *Salvagne v. Fairfield Ford, Inc.*, No. 09-324, 2011 WL 13248504, at *1-2 (S.D. Ohio Sept. 21, 2011) (awarding maximum TILA class damages of $33,292.15, which allowed for $35.72 per class member).

In sum, given the proposed settlement fund here in comparison to the CLA's statutory damages limit, and viewing claimants' likely recoveries in conjunction with other per-person recoveries in similar consumer protection class cases, the settlement presented is fair, reasonable, and adequate, and should be approved by this Court.

### C. The posture of this case and experience and views of counsel also favor approval.

The fifth and sixth *Hanlon* factors likewise support final approval. After months of litigation—which included the exchange of mandatory initial disclosures, the filing of Ms. Spencer's amended complaint, as well as the filing of a motion to dismiss under Rules 12(b)(2) and 12(b)(6)—the settlement here was achieved with a clear view as to the strengths and weaknesses of Ms. Spencer's class claims. She and Defendant also exchanged informal discovery concerning Defendant's net worth, class damages and the number of potential class members. As a result, Ms. Spencer was able to adequately assess the class's maximum potential statutory damages recovery at trial and negotiate a settlement that even surpasses that amount.

Thus, counsel—who have substantial experience in litigating class actions, particularly under consumer protection statutes[7]—and this Court are in a good position to evaluate the fairness of the settlement. To that end, both Ms. Spencer and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is

---

[7] *See* Declaration of Jesse S. Johnson in Support of Plaintiff's Motion for Approval of an Incentive Award and an Award of Attorneys' Fees and Reimbursement of Costs and Litigation Expenses, filed concurrently herewith, at ¶¶ 7-26.

because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Moreover, the parties' arm's-length settlement negotiations through experienced counsel further demonstrates the fairness of the settlement that was reached, and that it is not a product of collusion. Indeed, counsel for Defendant and Ms. Spencer spent several months zealously negotiating on behalf of their clients and absent class members, resulting in the exchange of multiple written counteroffers and telephonic conferences among counsel before reaching the agreement here presented. Ms. Spencer and her counsel submit that the value of the class's recovery—which exceeds the applicable damages cap—reflects their confidence in her class claims. *See Schuchardt*, 314 F.R.D. at 685 ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement."); *Wood*, 2009 WL 10673479, at *4 ("Where, as here, settlement is reached through arms'-length negotiations between experienced counsel, and there is no evidence of collusion or bad faith, the judgment of counsel concerning the adequacy of the settlement is entitled to deference.").

### D. Universal support from the parties, their counsel, and the class highlights the fairness and reasonableness of the settlement.

Next, the eighth *Hanlon* factor looks to the class's reaction to the settlement. Preliminarily, it bears repeating that all involved in this settlement agree that the negotiated resolution is a fair and reasonable compromise of Ms. Spencer's and the class's claims. In particular, Ms. Spencer and class counsel are proud of the results achieved and fully support approval. Plus, after a direct mail notice campaign to more than 8,100 class members, not one person has stepped forward to object to the settlement's terms or request to be excluded.

What's more, the claims rate in this case—9% with time still remaining—is well in line with claims rates in other class action settlements. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that claims rates in

consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"); *Evans v. Linden Research, Inc.*, No. 11-1078, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29, 2014) (approving class action settlement with 4.3% claims rate).

The class's reaction thus has been universally positive, and the absence of any opposition strongly supports final approval. *See In re Apollo Grp. Inc. Secs. Litig.*, Nos. 04-2147, 04-2204, 04-2334, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012) (Teilborg, J.) ("This Notice included clear instructions about how to object to the Proposed Settlement if the Class Members opposed final approval of the Proposed Settlement. There have been no objections from Class Members or potential class members, which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. 08-1977, 2010 WL 3715138, at *6 (D. Ariz. Aug. 31, 2010) (Murguia, J.) ("Pursuant to the Class Action Fairness Act of 2005, LifeLock also provided notice to 57 federal and state government officials. Not one of the governmental entities that LifeLock notified objected to the proposed settlement. This weighs heavily in favor of settlement approval."); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 52 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### E. The settlement treats class members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

11

Here, each class member has the same claim resulting from his or her execution of the same form program service agreement with Defendant. And as a result, the settlement provides that each participating class member will receive an equal portion of the $36,819 class fund. Moreover, the release affects each class member in the same way, as each participating class member will agree to release the same CLA claims. As such, this factor further supports final approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### F. Distribution of notice of the settlement satisfied due process requirements and the requirements of Rule 23.

Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Here, First Class used all reasonable efforts to provide direct mail notice to each member of the class. *See* Ex. A at ¶¶ 6-15. The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objecting or excluding one's self, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding class counsel's request for an award of attorneys' fees and expenses, and Ms. Spencer's request for an incentive award; and (6) how to make inquiries and obtain additional information. *Spencer*, 2019 WL 1034451, at *2-3 (approving class notice).

In short, this notice plan ensured that class members' due process rights were amply protected, and the settlement should be approved. *See* Fed. R. Civ. P. 23(c)(2)(B).

**Conclusion**

In light of the support outlined above, Ms. Spencer respectfully requests that this Court enter the accompanying order granting final approval to the parties' class action settlement. Neither Defendant nor any class members oppose approval of the settlement, though Defendant may contest the amount of the attorneys' fee and expense award that is the subject of Ms. Spencer's accompanying fee petition.

RESPECTFULLY SUBMITTED this 24th day of April, 2019.

By: */s/ Jesse S. Johnson*
Jesse S. Johnson
GREENWALD DAVIDSON
RADBIL PLLC
*Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2019, a copy of the foregoing was filed electronically using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record.

*s/ Jesse S. Johnson*
Jesse S. Johnson